560 So.2d 1166 (1990)
Charles Edward CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 73089.
Supreme Court of Florida.
April 26, 1990.
Robert L. Doyel of Doyel & McKinley, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Charles Edward Carter appeals his conviction for the murder of Millie Worden and the sentence of death imposed by the trial court. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction but vacate the sentence of death and remand for imposition of a life sentence.
*1167 On September 22, 1987, Charles Carter and his codefendant, fifteen-year-old Johnny Johnson, were hitchhiking in Polk County. They were picked up by an elderly woman named Millie Worden, who occasionally liked to befriend hitchhikers. Worden took Carter and Johnson to her home and, later, when Worden's daughter visited, concocted a story that the two were relatives from West Virginia.
A few days later, Worden's partially decomposed body was found in an abandoned house several miles away. A coroner determined that the woman had died of asphyxiation caused either by strangulation or by cloth stuffed in her mouth, or perhaps by both. The woman had emphysema, which made asphyxiation easier.
Carter and Johnson meanwhile had stolen Worden's car and driven to North Carolina. They also made charges using Worden's credit cards.
There was some dispute over exactly how Worden died. At trial, Johnson testified on behalf of the state that Carter had bound Worden's arms and legs, stuffed cloth in her mouth, wrapped sheets around her and tied a knot in them. Later, said Johnson, he and Carter put Worden in the trunk of the woman's car. At this time, he said the woman groaned and possibly said "let me out of here." The two then drove to the abandoned house and left Worden there, said Johnson.
Carter told a different story. Taking the stand, Carter testified that he was not present in Worden's house for part of the evening of the murder. Around midnight that night, testified Carter, he left Worden's house and hitchhiked to the home of a friend, Mary Geary. At about 2 a.m., said Carter, someone began honking a horn in the yard. Going outside, Carter said he found Johnson sitting in Worden's car. At this time, Carter stated that he joined Johnson and went with him to North Carolina.
Geary testified that she could not remember the date of Carter's visit, but that it was about the time of Worden's death. At that time, said Geary, someone did drive up outside her house and begin honking a car horn; and Carter went outside and got into this car, she said.
At trial, the jury found Carter guilty of first-degree murder, robbery, and kidnapping.
During the penalty phase, the state presented the coroner's testimony that a person suffering asphyxiation is still conscious and able to experience fear. The state also presented the testimony of Worden's daughter that Worden became very frightened when she could not breathe.
In mitigation, the defense presented testimony of a clinical psychologist that Carter had organic brain damage caused by brain injuries and chronic cocaine abuse.
A psychiatrist confirmed this testimony and concluded that Carter suffered brain damage, a personality disorder and the effects of drug abuse. The psychiatrist felt that Carter suffered extreme mental or emotional disturbance at the time of the murder, was substantially drug-intoxicated, had a diminished capacity to appreciate the criminality of his conduct, had a diminished capacity to conform his conduct to the requirements of the law and had a diminished capacity to commit a crime in a cold, calculated, and premeditated manner.
Both of these defense witnesses testified that Carter's disorders could be treated and that he could be rehabilitated.
After hearing this testimony, the jury recommended life in prison. However, the trial court overrode the jury, finding five aggravating factors and no mitigating factors. In addition, the judge departed from the sentencing guidelines and imposed a consecutive life sentence for the kidnapping conviction and a consecutive fifteen years for robbery.
In this appeal, Carter raises four issues.
First, he contends that the state introduced improper evidence that prejudiced his case. This evidence consisted of photographs of Worden's decomposed body, a gun and knife taken from Carter that were of no relevance to the case, testimony about Carter's involvement in an unrelated burglary a few days before the murder, evidence of Carter's drug abuse and inquiry *1168 into the nature of Carter's prior convictions. We find error only in the introduction of the gun and knife, which unquestionably were irrelevant. However, having reviewed the record in its entirety, we can only conclude that this error was harmless and could not have affected the outcome of the case. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The other evidence either was properly admitted or was admitted without objection by Carter, which bars consideration of the issue at this time.
Second, Carter argues that the prosecutor engaged in improper argument impugning defense counsel and vouching for the truthfulness of the state's chief witness, Johnson. This claim is barred for failure to object below. Darden v. State, 329 So.2d 287 (Fla. 1976), cert. dismissed, 430 U.S. 704, 97 S.Ct. 1671, 51 L.Ed.2d 751 (1977).
Third, Carter contends that the case against him was based almost entirely on the testimony of Johnson and that Johnson's version of the murder is too unbelievable to be deemed reliable. Having reviewed the record, we believe the issue of Johnson's credibility was properly an issue for the jury. This Court thus may not disturb the verdict. Jent v. State, 408 So.2d 1024, 1028 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976).
Finally, Carter argues that the judge's decision to override the jury's recommendation of life was improper under Tedder v. State, 322 So.2d 908 (Fla. 1975). We agree. In Tedder we established the following standard:
In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
Id. at 910. As we elaborated in Ferry v. State, 507 So.2d 1373, 1376 (Fla. 1987), the Tedder standard
has been consistently interpreted by this Court to mean that when there is a reasonable basis in the record to support a jury's recommendation of life, an override is improper.

(Emphasis added.) We thus must look to the mitigating evidence before this jury to determine if it provided a reasonable basis for the life recommendation.
During the penalty phase of trial, both a psychologist and psychiatrist testified that Carter suffered incurable organic brain damage as a result of beatings as a child and other severe head injuries. They also testified that their histories of Carter revealed extensive drug abuse, including the possibility of substantial intoxication at the time of the murder.
The psychologist, Dr. Dee, testified that he had performed a number of detailed tests on Carter. These tests disclosed the following:
I believe that Mr. Carter suffers an organic brain syndrome... . What that means is that the person is brain damaged... .
... .
... [T]he reason it's called organic brain syndrome with mixed features, is there are also emotional components of these. These include increased impulsivity, I mean, to an abnormal degree. Frequently includes rage reactions, a kind of emotional instability and irritability, that's probably one of the most constant features of organic brain syndrome.
Dr. Dee also testified that Carter suffered "somewhat delusional" schizoid episodes and had suffered severe bouts of depression at the time of the murder and thereafter.
In addition, Dee stated that Carter's incurable brain injuries had resulted in a diminished capacity to reason, which was exacerbated by drug and alcohol addiction. Dee also testified that Carter has a diminished ability to plan events. The psychologist stated: "I don't think he premeditates things. He does whatever he feels on the spur of the moment." However, Dr. Dee also stated that Carter is capable of being *1169 treated for his disorders in the state penal system.
The psychiatrist, Dr. McClain, testified that, based on Carter's history, Carter probably suffered extreme mental disturbance at the time of the murder and probably was unable to appreciate the criminality of his conduct. The psychiatrist also testified that this impairment probably resulted in Carter being unable to engage in the "careful planning" required to coldly and calculatedly premeditate a murder under Florida law. See Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Finally, the psychiatrist stated that he felt it was possible Carter could be treated and rehabilitated in a penal setting.
Although some reasonable persons might disbelieve portions of this testimony, we have no doubt that other reasonable persons would be convinced by it. The trial court's decision to override the jury's recommendation thus was improper, because a reasonable basis exists on this record to support the jury's decision. Hall v. State, 541 So.2d 1125 (Fla. 1989); Harmon v. State, 527 So.2d 182 (Fla. 1988); Perry v. State, 522 So.2d 817 (Fla. 1988); Ferry; Tedder.
Indeed, we find the present case similar to our recent decision in Freeman v. State, 547 So.2d 125 (Fla. 1989), in which a similar jury override was disapproved. In both cases the jury heard evidence that, if true, would establish both statutory and nonstatutory mitigating evidence regarding the defendant's mental capacity, psychological state and childhood abuse. Indeed, we believe the mitigating evidence presented in the present case is more extensive than that argued in Freeman, since it also tended to establish that Carter is amenable to rehabilitation, see Cooper v. Dugger, 526 So.2d 900, 902 (Fla. 1988), and suffered the ill effects of chronic alcohol and drug abuse at the time of his offense. See, e.g., Huddleston v. State, 475 So.2d 204, 206 (Fla. 1985); Norris v. State, 429 So.2d 688, 690 (Fla. 1983).
Accordingly, we affirm Carter's convictions but reduce the death penalty to a sentence of life in prison. The other issues raised by Carter regarding imposition of the death penalty thus are moot and will not be addressed.[*] Carter does not contest the departure sentences imposed for kidnapping and robbery, and these accordingly are affirmed.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] We note, however, that the trial court's order imposing the death penalty was fatally defective in that it found each aggravating factor to be established only by "clear and convincing" evidence. Aggravating factors must be established beyond a reasonable doubt. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Although this issue is moot in light of our disposition of the case, we belabor the matter for the instruction of our trial courts.