591 So.2d 160 (1991)
Carlos SANTOS, Appellant,
v.
STATE of Florida, Appellee.
No. 74467.
Supreme Court of Florida.
September 26, 1991.
Rehearing Denied January 23, 1992.
Jack T. Edmund, Fort Meade, for appellant.
Robert A. Butterworth, Atty. Gen. and Anne Y. Swing, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Carlos Santos appeals his conviction and sentence of death for two counts of murder and his conviction of aggravated assault with a firearm. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On August 21, 1987, Santos killed his 22-month-old daughter Deidre Torres and her mother, Irma Torres. The mother died of *161 two pistol rounds into the face and head. Deidre died of one round into the top of the head. All shots were fired at extremely close range.
A history of domestic problems preceded the murders. Santos and Irma had lived together without marrying for many years. Their relationship was sometimes stormy; and it foundered, Santos contended, because of meddling by Irma's family. After the breakup, Irma tried to stay away from Santos, who responded by making efforts to find her. The evidence adduced at trial showed that Santos was deeply disturbed by the fact that Irma had refused to give Deidre his last name and his belief that Irma and her family were restricting his access to the child. Expert psychological testimony indicated that Santos reacted with extreme emotion on this last matter, because he viewed it as a direct affront to a misguided, excessive sense of masculinity.
Two days before the murder Santos went to Irma's house, purportedly to visit his daughter. At this time, Irma said he threatened to kill her and that she saw him carrying a pistol and called the police. The police found no weapon when they searched Santos immediately after he left Irma's apartment. Santos argued that she had mistaken his wallet for a gun butt and said he purchased the murder weapon later.
The day of the murder, Santos went by taxi to a place near Irma's parents' house, where Irma was staying. At this time, Santos saw Irma walking along the street with Deidre and her son from a prior marriage, Jose.[1] Several witnesses testified that they saw Santos proceeding at a fast pace toward the trio.
When Irma saw Santos coming, she screamed and began running with Deidre in her arms. Santos quickly caught her, grabbed her, spun her around, and fired the three fatal rounds.
Santos continued along the road and chanced upon the same taxi that had taken him to the scene. He entered it and gave directions to take him elsewhere. The cab soon was stopped by a deputy sheriff, who saw a pistol on the floorboard. He took the pistol and arrested Santos.
Ballistics comparisons showed that this pistol had fired the fatal shots. Santos' hands tested positive for having fired a weapon. Cynthia Torres, Irma's daughter from a prior marriage, also testified that Santos previously had threatened to kill her mother. There was testimony that Santos had told Irma he also intended to kill their child. The jury found Santos guilty of two counts of first degree murder and one of aggravated assault with a firearm.
In the penalty phase, a Dr. Kremper testified that, at the time of the murder, Santos was under extreme emotional distress, was involved in a denial phenomenon, had an impaired capacity to appreciate the criminality of his conduct, and had an impaired capacity to conform his conduct to the requirements of the law. Dr. Kremper also outlined instances of abusive conduct in Santos' childhood home environment, including episodes in which his father abused his mother. According to this unrebutted testimony, Santos' father disciplined the boy by methods such as forcing him to kneel on hard grains of rice and forcing him to sit in his own excrement for hours.
A psychiatrist, Dr. Ainsworth, reached similar conclusions and essentially concurred in Dr. Kremper's opinions. Ainsworth agreed that Santos more likely than not suffered from a severe emotional impairment at the time of the murders. As an example of such behavior, Dr. Ainsworth noted Santos' psychological reaction to the stress of incarceration and trial. In 1988, the trial for Irma and Deidre's murder had to be postponed because Santos suddenly became psychotic during the initial stages of the criminal proceedings. At that time, Santos was declared incompetent to stand trial and remained so until the following year.
*162 Dr. Ainsworth testified that, when the court ordered him to evaluate Santos in 1988, he found his patient "chained to a little metal bed" and exhibiting bizarre and agitated behavior. Santos was mumbling and incoherent, suffered paranoid delusions, was "hearing voices," and "was making strange noises, grunts and snorts." On another occasion, Santos was observed throwing feces. Dr. Ainsworth explained that, based on scientific evaluation, Santos had a psychological tendency to slip into "a psychotic condition every once in a while, especially when under great stress." Dr. Ainsworth concluded that it was "likely" that Santos had descended into a similar condition when committing the murders because of the stress associated with his and Irma's ongoing domestic dispute.
On questioning by the State, Dr. Ainsworth also noted that Santos consistently denied Irma was dead and claimed to make telephone calls to her from the jail. Santos told Ainsworth that he had written letters to Irma and received responses from her. These delusions, stated Ainsworth, are consistent with the psychological phenomenon called "denial," in which a person's mind blots out an episode too painful to confront. When asked if he believed Santos was fabricating these delusions, Dr. Ainsworth stated:
At first I did. At first I really did in many ways. As I said earlier, that is a possibility, but the pattern of his consistency in denying these things to me is unusual and I would say denial is probably  now knowing all that I know, that denial is probably more likely ... .
(Emphasis added.)
After hearing this testimony, the jury recommended death by a vote of 10 to 2. The trial judge agreed with the jury. It found three aggravating factors: (1) previous conviction of a violent felony, i.e., any of the other two crimes Santos committed when he murdered Irma and Deidre; (2) the murders were "heinous, wicked, evil, atrocious, or cruel"; and (3) the murders were cold, calculated, and premeditated.
The judge found no statutory mitigating factors. He specifically stated that there was no evidence that Santos was under the influence of extreme mental or emotional disturbance or that Santos could not appreciate the criminality of his conduct or conform his conduct to the requirements of the law. The trial court then stated that it had reviewed the nonstatutory mitigating factors and found that they "do not outweigh the aggravating circumstances in this case." The court did not state what these factors might be.
We find that only one of Santos' arguments has merit.[2] Santos argues that the aggravating factors were improperly found and that valid mitigating factors were erroneously ignored.
Here, the record discloses that the State failed to prove beyond a reasonable doubt that the present murder was cold, calculated, and premeditated. We acknowledge that the evidence shows that Santos acquired a gun in advance and had made death threats  facts that sometimes may support the State's argument for cold, calculated premeditation.
However, the fact that the present killing arose from a domestic dispute tends to negate cold, calculated premeditation. In the recent case of Douglas v. State, 575 So.2d 165 (Fla. 1991), we rejected a trial court's finding of cold, calculated premeditation in a killing that arose from a domestic dispute associated with a lover's triangle. We did so even though the evidence showed that the assailant had obtained a rifle, tracked down a woman with whom he had been romantically involved, torturously abused her by forcing her to have sex with her newlywed husband, and then brutally bludgeoned and shot the husband to death as the woman watched. The entire episode lasted some four hours. Id. at 168 (Ehrlich, Senior Justice, dissenting).
*163 The sheer duration of this torturous conduct, in another context, might have supported beyond a reasonable doubt a conclusion that the killing met the standard for cold, calculated premeditation established in Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), i.e., that it was the product of a careful plan or prearranged design. The opinion in Douglas, however, rested on our conclusion that the killing arose from violent emotions brought on by the defendant's hatred and jealousy associated with the love triangle. In other words, the murder in Douglas was a classic crime of heated passion. It was not "cold" even though it may have appeared to be calculated. There was no deliberate plan formed through calm and cool reflection, see Rogers, only mad acts prompted by wild emotion.
In the present case, we find much the same situation. Santos was involved in an ongoing, highly emotional domestic dispute with Irma and her family. The unrebutted expert testimony indicated that this dispute severely deranged him. According to this testimony, he was under extreme emotional distress at the time of the murders, was involved in a denial phenomenon, had an impaired capacity to appreciate the criminality of his conduct, and had an impaired capacity to conform his conduct to the requirements of the law. The psychological experts supported these conclusions with unrebutted factual testimony indicating that similar stress had sent Santos into a psychotic state during the early stages of his trial.
This testimony is entirely consistent with a crime of irrational, heated passion brought on by a domestic dispute, such as that in Douglas. Accord Irizarry v. State, 496 So.2d 822, 825 (Fla. 1986); Ross v. State, 474 So.2d 1170 (Fla. 1985); Blair v. State, 406 So.2d 1103 (Fla. 1981); Kampff v. State, 371 So.2d 1007 (Fla. 1979); Chambers v. State, 339 So.2d 204 (Fla. 1976). The factors elaborated by the experts clearly do not negate Santos' guilt, but they do tend to negate any inference that his acts were accomplished through "cold" deliberation. Based on the unrebutted testimony of the experts, it is equally reasonable to conclude that Santos' acts constituted a crime of heated passion as it is to conclude that they exhibited cold, calculated premeditation. Accordingly, the State has failed to prove this aggravating factor beyond a reasonable doubt, as it must under Florida law. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied sub nom. Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
We also agree that this crime was not heinous, atrocious, or cruel. As we recently explained in Cheshire v. State, 568 So.2d 908 (Fla. 1990), this factor is appropriate in torturous murders involving extreme and outrageous depravity. A murder may fit this description if it exhibits a desire to inflict a high degree of pain, or an utter indifference to or enjoyment of the suffering of another. Id. at 912. The torturemurder in Douglas, which involved heinous acts extending over four hours, illustrates a case in which this factor was appropriately found. Douglas, 575 So.2d at 166. The present murders happened too quickly and with no substantial suggestion that Santos intended to inflict a high degree of pain or otherwise torture the victims. Accordingly, the trial court erred in finding this factor to be present.
However, we agree with the State that the aggravating factor of a prior violent felony properly exists. Wasko v. State, 505 So.2d 1314, 1317 (Fla. 1987).
Having found only one valid aggravating factor, we now must review the trial court's findings on mitigating factors. In this instance, the trial court rejected without explanation the unrebutted testimony of Santos' psychological experts.
On its face, this evidence suggests that two statutory mitigating factors may be present. These are that Santos was under the influence of extreme mental or emotional disturbance, section 921.141(6)(b), Florida Statutes (1987), and that Santos was substantially impaired in his capacity to conform his conduct to the requirements of the law. § 921.141(6)(f), Fla. Stat. (1987). In addition, there also was evidence suggesting *164 that Santos lived in an abusive environment as a child, which would constitute a valid nonstatutory mitigating factor. Carter v. State, 560 So.2d 1166 (Fla. 1990); Brown v. State, 526 So.2d 903 (Fla.), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988).
Mitigating evidence must at least be weighed in the balance if the record discloses it to be both believable and uncontroverted, particularly where it is derived from unrefuted factual evidence. Hardwick v. State, 521 So.2d 1071, 1076 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). In Rogers we set forth an extensive discussion of the federal cases from which this limitation derives. Rogers, 511 So.2d at 534 (citing Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion)). Distilling this case law, we then enunciated a three-part test:
[T]he trial court's first task ... is to consider whether the facts alleged in mitigation are supported by the evidence. After the factual finding has been made, the court then must determine whether the established facts are of a kind capable of mitigating the defendant's punishment, i.e., factors that, in fairness or in the totality of the defendant's life or character may be considered as extenuating or reducing the degree of moral culpability for the crime committed. If such factors exist in the record at the time of sentencing, the sentencer must determine whether they are of sufficient weight to counterbalance the aggravating factors.
Id. (emphasis added). Accord Campbell v. State, 571 So.2d 415, 419-20 (Fla. 1990); Cheshire, 568 So.2d at 912; Hardwick, 521 So.2d at 1076.
The requirements announced in Rogers and continued in Campbell were underscored by the recent opinion of the United States Supreme Court in Parker v. Dugger, ___ U.S. ___, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). There, the majority stated that it was not bound by this Court's erroneous statement that no mitigating factors existed. Delving deeply into the record, the Parker Court found substantial, uncontroverted mitigating evidence. Based on this finding, the Parker Court then reversed and remanded for a new consideration that more fully weighs the available mitigating evidence. Clearly, the United States Supreme Court is prepared to conduct its own review of the record to determine whether mitigating evidence has been improperly ignored.
Based on the record at hand, we are not convinced that the trial court below adhered to the procedure required by Rogers and Campbell and reaffirmed in Parker. As noted earlier, the trial court also erred in its findings on aggravating factors. Accordingly, we vacate the sentence and remand for a new sentencing hearing before the trial court in compliance with this opinion, Rogers, Campbell, and all other applicable law.
It is so ordered.
SHAW, C.J., and OVERTON and HARDING, JJ., concur.
GRIMES, J., concurs in result only with an opinion, in which McDONALD, J., concurs.
KOGAN, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.
GRIMES, Justice, concurring in result only.
In the sentencing order, the trial judge made the following finding:
3. The crimes for which the defendant, Carlos Santos, is to be sentenced were committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. This circumstance is established by clear and convincing evidence beyond a reasonable doubt that the defendant purchased a firearm in preparation for the executions of the helpless victims, the defendant displayed the firearm to the victims and verbally told the victim, Irma Torres, *165 that he would kill her and the small child victim, Deidre Torres. The defendant set out on a planned, prepared, course of action to hunt down the victims and execute them. The defendant carried out the plan by finding the victims walking alongside the roadway. The defendant chased the victims down and shot them in the head at point blank range. No justification existed for the killing of the helpless victim, Irma Torres. No justification existed for the killing of the helpless, innocent, twenty-two-month-old child victim, Deidre Torres.
The record in this case supports the trial judge's conclusion.
Obviously, many murders committed as a result of family disputes are not cold, calculated, and premeditated. This is because they are often committed during the course of an argument without preplanning. The facts surrounding these murders were entirely different. Santos bought a gun and threatened to kill both Irma and the twenty-two-month-old child. Two days later, he relentlessly tracked them down and shot them at point-blank range. He even fired at Irma's son. He then found a taxi and tried to escape.
Santos planned these killings and carried out his plan. The fact that he may have been in an emotional state does not eliminate the statutory aggravating circumstance. Rather, this is evidence to be considered in mitigation and weighed against that and any other appropriate aggravating circumstance.
However, I do agree that the murders cannot be characterized as heinous, atrocious, or cruel and that the trial judge's order does not properly reflect whether he considered Santos' mental impairment and emotional disturbance. Therefore, I concur that it is necessary for the judge to conduct a new sentencing hearing.
McDONALD, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
I agree with the analysis contained in the majority opinion regarding the weighing of mitigating evidence. However, I disagree as to the conclusions that flow from that analysis as applied to the facts at hand. In particular, I believe that the three-part test for weighing mitigating evidence announced in Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), as well as other precedent, compels the conclusion that death is an inappropriate penalty in this instance. A new sentencing hearing thus is a waste of judicial resources, since I believe the law itself prohibits any sentence except life in prison without possibility of parole for twenty-five years.
Applying the first step of the Rogers analysis, I find that the evidence clearly supports "the facts alleged in mitigation." Rogers, 511 So.2d at 534. Here, the facts upon which the psychological experts based their opinions are believable, unrebutted, and thus not in dispute to any substantial degree. Indeed, the State chose to present no evidence of its own during the penalty phase. While the State did establish on cross-examination that the experts had entertained doubts about Santos' delusions, the record also discloses that these doubts later were largely dispelled by the consistency and extreme nature of Santos' bizarre behavior. In other words, the experts provided an essentially unrefuted factual basis for their opinions. They testified that it was more likely than not that Santos suffered severe emotional disturbances resulting in psychosis.
Second, Rogers requires a determination of whether the facts "are of a kind capable of mitigating the defendant's punishment." Here, I believe there can be no believable dispute. The unrebutted testimony of the experts establishes that Santos was under the influence of extreme mental or emotional disturbance, § 921.141(6)(b), Fla. Stat. (1987), and that Santos was substantially impaired in his capacity to conform his conduct to the requirements of the law. § 921.141(6)(f), Fla. Stat. (1987). In addition, these experts stated that Santos lived in an abusive environment as a child, which clearly is a valid nonstatutory mitigating factor. Carter v. State, 560 So.2d 1166 (Fla. 1990); Brown v. State, 526 So.2d 903 (Fla.), cert. denied, 488 U.S. 944, 109 S.Ct. *166 371, 102 L.Ed.2d 361 (1988). Thus, I believe the trial court erred as a matter of law in rejecting these mitigating factors.
Third, Rogers teaches that, if the first two conditions exist, "the sentencer must determine whether they are of sufficient weight to counterbalance the aggravating factors. Rogers, 511 So.2d at 534. In other words, the sentencing authority may not "refuse to consider, as a matter of law, any relevant mitigating evidence." Eddings v. Oklahoma, 455 U.S. 104, 114, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). Uncontroverted factual evidence must be considered and weighed when it has mitigating value, Hardwick v. State, 521 So.2d 1071, 1076 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988), along with the expert interpretations of those facts.
Here, the trial court clearly erred in its determination that no statutory mitigating factors existed. Rogers, 511 So.2d at 534. The only evidence on this question establishes the exact opposite.
The position taken by the majority is generally consistent with these conclusions, except that it remands for the trial court to apply these legal principles. I believe the majority fails to take a final analytical step the case law compels, which would prohibit a remand here. Based on the record, there is only one valid aggravating factor as weighed against two statutory mitigating factors and one nonstatutory mitigating factor. These mitigating factors plainly establish that Santos was a very disturbed individual who lapses into psychosis in stressful situations, such as his heated and emotional problems with Irma and his daughter. Thus, I believe that no resentencing should be ordered, because our own case law renders death a disproportionate sentence in the present case. E.g., Ross v. State, 474 So.2d 1170 (Fla. 1985); Blair v. State, 406 So.2d 1103 (Fla. 1981).
In particular, I note that our own prior opinion in Blair involved an ongoing domestic dispute and subsequent killing that was more aggravated and less mitigated than Santos' crime. In Blair, we vacated the death penalty on proportionality grounds despite circumstantial evidence that the defendant had dug his wife's grave in advance, sent the children away, and then killed and buried his wife. The only mitigating evidence in Blair was that the defendant had no significant prior history of crime; and the crime was aggravated by evidence that the murder was meant to conceal from authorities the defendant's sexual battery of a minor child, which the wife had threatened to disclose to law officers. Since death was not a proportional penalty in Blair, it cannot also be proportional in the present case.
The only arguably relevant distinction between this case and Blair is the fact that Santos committed two murders simultaneously. Had the two murders been separated by any appreciable amount of time, I might agree that this would be sufficiently aggravating to make death a permissible penalty, provided the mitigating evidence was not weightier.
However, I cannot reach the same conclusion under the facts at hand. Both the killings occurred virtually in the same moment, and the evidence is consistent with the conclusion that Santos' daughter died only because her mother happened to be holding the child in her arms. In light of the weighty mitigating evidence, I thus cannot say that these murders were worse than the one in Blair, where the defendant actually dug his victim's grave in advance and did not suffer from the psychotic tendencies exhibited by Santos.
For the foregoing reasons, I would reduce the two death sentences to life in prison without possibility of parole for twenty-five years. Otherwise, I am in general agreement with the majority's analysis.
BARKETT, J., concurs.
NOTES
[1] The charge of aggravated assault with a firearm was based on Santos' conduct toward Jose at the time Irma and Deidre were killed.
[2] Santos also argues: that the trial court erred in not issuing an express finding that the state had excluded every reasonable hypothesis consistent with innocence; and that death is not a proportional penalty. We find the first of these arguments without merit, and that the second issue is a matter to be considered afresh at the resentencing.