644 So.2d 52 (1994)
George Wallace BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 78007.
Supreme Court of Florida.
May 12, 1994.
Rehearing Denied October 26, 1994.
Ronald E. Smith, Lakeland, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon George Wallace Brown. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
When defendant George Brown was arrested on an unrelated warrant in Englewood, Colorado, on May 1, 1990, he had in his possession two wallets, his own and one containing credit cards in the name of Horace Brown. He told Detective Hess, "Horace D. Brown is dead. He was murdered eight days ago." He added quickly, "No, no, I didn't do it, but I was the only one that was a witness to it." Brown said he wanted to talk to an investigator, and later that evening after being told of his rights and signing a waiver gave Detective Lackey an account of the crime, paraphrased below:
George met Horace at a bar called Sam's in an unspecified location on April 22, 1990, and after drinking with him asked Horace if he would drive him to his girlfriend's in Polk City, Florida. On the way, Horace drove onto a dirt road and met a friend named Danny in another car. While Horace was in Danny's car, George left in Horace's car, drove to his girlfriend's, *53 and returned an hour later. He found Horace's wallet, watch, and papers on the ground where Danny's car had been, and then after driving down the road found Horace's body. The body was approximately twenty-five feet off the road, lying feet first on its stomach in weeds. The body was bloody and when George could find no pulse, he got scared and left. He did not go to the police because he had outstanding warrants and was afraid he would be charged with the killing. He drove to Orlando, cashed a check from Horace's checkbook for $650, bought a car, and drove to Nashville where he planned on becoming a country music star under the stage name "K.C. Cannon." Two days later, he left Nashville and drove to Colorado, where he was arrested.
Based on Brown's statement, Colorado police contacted Polk County Sheriff's deputies who located Horace's decomposing body in a ditch where Brown said it would be and in the posture he had described. Horace had been stabbed three times. Detective Ore of the Polk County Sheriff's Office flew to Colorado and interviewed Brown on May 2 after reminding him of his rights and showing him his signed waiver form. Brown gave roughly the same account of events at this session. His girlfriend, Judy, subsequently told police that he had left her house on foot in the early evening on the night of the killing, and had returned later that night driving a car she had not seen before. On returning, he had blood on his clothes and told her he had been in a fight. She noticed that a pocket knife she normally kept on her nightstand was missing. He packed his belongings and left that night.
Brown was charged with, and convicted of, first-degree murder and armed robbery. He was sentenced to life on the robbery count and, consistent with the jury's eight-to-four vote, death on the murder count. The judge found three aggravating and no mitigating circumstances.[1] Brown appeals his convictions and sentences, raising fourteen issues.[2]
Brown first claims that insufficient evidence was adduced showing premeditation. We need not reach this issue, however, because there was ample evidence supporting first-degree murder under a felony-murder theory: Brown was convicted of robbery; he stole Horace's car and credit cards, and cashed one of his checks for $650. We find no error.
Brown next argues that the trial court erred in allowing several State witnesses to testify that when he was arrested in Colorado it was on a warrant for an unrelated crime, auto theft. Brown, however, failed to object to any of these statements except for those made by Detective Lackey. Detective Lackey testified only as to what Brown confessed to him: Lackey stated that Brown told him that he did not go to police on discovering the body because he had outstanding warrants. Brown later told the detective that Colorado police arrested him on an auto theft warrant. We conclude that the information was admissible to explain Brown's own statement concerning his postmurder conduct. Further, Brown's lawyer apparently felt that it was better to let the jury know what the warrant was for than let them guess, because he himself asked a second State witness on cross-examination exactly what the warrant was for. We find no error.
Brown contends that the court erred in finding that the murder was heinous, atrocious, or cruel. We agree. The medical examiner testified that when the victim's *54 body was discovered it was badly decomposed and all that could be determined was that the victim had been stabbed three times and none of the wounds would have been immediately fatal. This evidence standing alone is insufficient to show beyond a reasonable doubt that this was a "conscienceless or pitiless crime which is unnecessarily torturous to the victim." State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). We find this error and any error in instruction on this circumstance harmless on this record. There is no reasonable possibility that the error contributed to the recommended sentence. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Brown's claim that the court erred in failing to consider and find statutory and nonstatutory mitigating circumstances is without merit. During the penalty phase, the defense put on a mental health expert and Brown's mother in mitigation. The expert's testimony, however, was controverted by the State on cross-examination, and the expert admitted that he had no independent source for his assessment of the defendant other than information provided by the defendant himself. The trial court considered mitigating evidence in three full pages of its sentencing order, but gave it little weight. We find no error. We find the remainder of Brown's claims to be without merit.
Based on the foregoing, we affirm Brown's convictions and sentences.
It is so ordered.
GRIMES, C.J., and OVERTON, McDONALD, SHAW and HARDING, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion.
KOGAN, Justice, concurring in part, dissenting in part.
An expert witness testified that Brown had suffered organic brain damage partly as a result of being shot in the head by his father. This witness also concluded that Brown's brain injuries had been exacerbated by injuries sustained in an automobile accident, by epilepsy, and by alcoholism. While some of the basis of the expert's opinion was a subjective history taken from Brown, the expert primarily relied on corroborating medical and hospital records and objective neuropsychological testing.
In fact, the expert administered seventeen such tests in the course of his examination of Brown. The expert's testing confirmed a diagnosis of organic brain damage, alcoholism, and a likely tendency to slip into psychosis. This led the expert to conclude that Brown's ability to conform his conduct to the law's requirements was greatly impaired at the time of the crime. The State's rebuttal of this testimony was unconvincing and certainly failed to establish that all of the evidence for mitigation came entirely from Brown's own mouth during psychological interviews. The record clearly shows that the expert had independent corroboration for each of the major points of his testimony.
That being the case, I believe the trial court erred in completely discounting the case for mental mitigators. I do not believe the trial court's out-and-out rejection of these factors can be squared with our opinions in Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), Campbell v. State, 571 So.2d 415 (Fla. 1990), Santos v. State, 591 So.2d 160 (Fla. 1991), and their progeny. Accordingly, I would affirm the conviction but remand for the trial court to reconsider the case for mitigation in light of Rogers, Campbell, and Santos.
NOTES
[1] The judge found that Brown had previously been convicted of a violent felony; that the murder was committed during the course of a robbery; and that the murder was especially heinous, atrocious, or cruel. See § 921.141, Fla. Stat. (1989).
[2] Brown claims the trial court erred on the following points: 1) sufficiency of the evidence; 2) suppression of video and photos; 3) failure to compel discovery from Gainesville police concerning other crimes; 4) failure to compel discovery from police concerning other suspects; 5) failure to cure error when police officer testified that Brown was arrested on another warrant; 6) death-qualifying of jurors by State; 7) suppression of statements; 8) speedy trial violation; 9) separate counsel for penalty phase; 10) instruction on HAC; 11) CCP not supported by evidence; 12) failure to find statutory mitigation; 13) proportionality; 14) failure to find nonstatutory mitigation.