684 So.2d 175 (1996)
Michael L. ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 85605.
Supreme Court of Florida.
November 21, 1996.
*176 James B. Gibson, Public Defender and Christopher S. Quarles, Chief, Capital Appeals, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General and Margene A. Roper, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
Michael L. Robinson appeals the sentence of death imposed after his conviction of first-degree murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Because the trial court failed to consider and weigh evidence of substantial mitigation found in the record, we vacate appellant's death sentence. See Farr v. State, 621 So.2d 1368 (Fla.1993).
On January 23, 1995, appellant pled guilty to the first-degree murder of Jane Silvia. Prior to the plea colloquy, appellant's counsel explained that appellant did not wish to proceed to trial, did not wish to present any defense, did not want his attorneys to file any motions on his behalf, and did not want to present any mitigation at the penalty phase. Appellant expressed that he desired to die and was "seeking the death penalty in this case."
On March 30, 1995, appellant waived his right to a penalty phase jury and the cause proceeded to sentencing before the trial court. The State called as its sole witness Detective David Griffin, who was the lead homicide investigator in the case and had taken two taped statements from appellant. At the penalty phase, Detective Griffin played the second taped interview in which appellant admitted to killing Jane Silvia. Relying on Koon v. Dugger, 619 So.2d 246 (Fla.1993), the defense proffered mitigating evidence which it had received from a psychologist, Dr. Berland, and appellant's mother. The State also presented brief testimony from the victim's brother who told the court that Robinson "destroyed my family." In addition to the evidence presented at the hearing, the court directed that a presentence investigation be conducted as to the circumstances of the crime and the defendant's background. A presentence report was subsequently completed and filed with the court.
On April 12, 1995, the trial court sentenced appellant to death. The court found three aggravating circumstances: (1) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest, see § 921.141(5)(e), Fla. Stat. (1995); (2) the capital felony was committed for pecuniary gain, see id. § 921.141(5)(f); and (3) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, see id. § 921.141(5)(i). The court concluded that the aggravating circumstances could not be outweighed by any potential mitigating circumstances and sentenced appellant to death.
On appeal, Robinson raises five issues.[1] First, Robinson argues that, although he waived the presentation of mitigating evidence, *177 the trial court erred by not considering valid mitigation in violation of our decision in Farr v. State, 621 So.2d 1368 (Fla. 1993).
It is well settled that mitigating evidence must be considered and weighed when contained anywhere in the record, to the extent it is believable and uncontroverted. E.g., Santos v. State, 591 So.2d 160 (Fla.1991); Campbell v. State, 571 So.2d 415 (Fla.1990); Rogers v. State, 511 So.2d 526 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Moreover, in those cases where a defendant waives the presentation of mitigating evidence, defense counsel must comply with the procedure set out in Koon v. Dugger, 619 So.2d 246 (Fla. 1993):
[1] [C]ounsel must inform the court on the record of the defendant's decision. [2] Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. [3] The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence.
Id. at 250; Durocher v. State, 604 So.2d 810, 812 n. 3 (Fla.1992), cert. denied, 507 U.S. 1010, 113 S.Ct. 1660, 123 L.Ed.2d 279 (1993). In the end, the trial judge must carefully analyze all the possible statutory and nonstatutory mitigating factors against the established aggravators to ensure that death is appropriate. Pettit v. State, 591 So.2d 618, 620 (Fla.), cert. denied, 506 U.S. 836, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992); Hamblen v. State, 527 So.2d 800, 804 (Fla.1988). The judge must not "merely rubber-stamp the state's position." Hamblen, 527 So.2d at 804.
In Farr v. State, 621 So.2d 1368 (Fla.1993), we extended this duty to consider mitigation to cases where the defendant argues in favor of the death penalty, as well as where the defendant asks the court not to consider mitigating evidence:
Farr argues that the trial court was required to consider any evidence of mitigation in the record, including the psychiatric evaluation and presentence investigation. Our law is plain that such a requirement in fact exists. We repeatedly have stated that mitigating evidence must be considered and weighed when contained anywhere in the record, to the extent that it is believable and uncontroverted. E.g., Santos v. State, 591 So.2d 160 (Fla.1991); Campbell v. State, 571 So.2d 415 (Fla. 1990); Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). That requirement applies with no less force when a defendant argues in favor of the death penalty, and even if the defendant asks the court not to consider mitigating evidence.
Id. at 1369.[2] In the instant case, appellant concedes compliance with the Koon procedure, but challenges the court's compliance with Farr.[3]
During the plea proceedings here, the following colloquy took place:
MR. IRWIN [DEFENSE COUNSEL]: Judge, we have some Florida Supreme Court case [Koon] which we'll present to the court which basically says ... we can waive a jury, and we are basically required to proffer to the court, which we intend to do through Dr. Berland what mitigators, statutory or non-statutory, we would be presenting....
THE COURT: And then if he waives that, then I am to ignore that?

THE DEFENDANT: Right.
THE COURT: I've got to forget that.

*178 MR. ASHTON [PROSECUTOR]: I think we may have a legal issue here. My reading of the case is that simply the attorneys proffer the area. I don't think it was intended that an entire evidentiary hearing by way of proffer be made because the court has to ignore it. But that's something we can work out once the court looks at the case.
(Emphasis added.) The trial judge's sentencing order addresses the mitigating factors in the following fashion:
THIS COURT HEARD THE PROFFER presented by the attorneys for the Defendant of mitigators they would have presented if the Defendant had permitted. The Defendant confirmed this desire on the record repeatedly. Their statutory and nonstatutory mitigators would have been that the defendant was in an extreme emotional state at the time of the offense, that he suffered from cocaine addiction, that he was afraid he'd go to prison, that he'd lost his job, he had a good jail record, he cooperated with the detectives and took them to the crime scene, that he suffered from mental defects according to Dr. Kirkland and Dr. Berland, and that he was remorseful.
Of greatest concern to this Court was Michael Robinson's competency and history of mental health. The Defendant did allow the reports of Doctors Kirkland and Berland into evidence for consideration. Although he has had some head injuries and possible genetic mental illness, nothing about the Defendant today or the date of the murder or the date of the plea indicates he is not competent to participate in these court proceedings or that he was not totally aware of what he was doing at the time of the offense or the ramifications of those actions. He is well above average intelligence.
As to his other mitigators, there is evidence that the Defendant was afraid he'd go to prison, but that is not something that rises to a mitigator in this case. He did cooperate with the detectives but only after his first statement proved untrue. There is some evidence he had a cocaine problem since the state's evidence is that he traded the victim's property for cocaine. There is no evidence at all that the other proffered mitigators exist; and, as requested by the Defendant, the Court has not considered the mitigators.

THE COURT HAS VERY CAREFULLY considered and weighed the aggravating circumstances and satisfied itself that any potential mitigating circumstances proffered would not have affected the life or death decision in this case, being ever mindful that human life is at stake in the balance. The court finds that the aggravating circumstances present in this case outweigh any potential mitigating circumstances.

(Emphasis added). It is apparent from the colloquy between the court and counsel set out above, and the confusing statements in the sentencing order, that the trial court and the parties, as in Farr, misperceived the court's obligation in considering mitigating evidence.
In addition to the statements of the prosecutor and the trial court at sentencing indicating that Farr was not followed, we find numerous problems with the trial court's discussion of the mitigating factors in the sentencing order. First, the trial court's open admission that it "has not considered the mitigators" violates our pronouncement in Farr. However, in the next sentence the court inconsistently states that it has "carefully considered and weighed the aggravators and satisfied itself that any potential mitigating circumstances proffered would not have affected the life or death decision in this case."
Second, although the trial court notes some mitigation in light of the evidence presented, it fails to go forward and properly indicate how much weight it afforded any mitigation, such as the nonstatutory mitigator of drug abuse which it found to exist. The court merely states: "There is some evidence that he had a cocaine problem since the state's evidence is that he traded the victim's property for cocaine." As a further example, we are left uninformed as to whether the court afforded any weight at all to appellant's cooperation with police, another proffered nonstatutory mitigating factor. *179 Here, the court states: "He did cooperate with the detectives but only after his first statement proved untrue."
Third, the court summarily dismisses a number of other possible mitigators because "[t]here is no evidence at all that the other proffered mitigators exist." However, the record reflects evidence of at least some of those mitigators, such as appellant's remorse and his good jail record. Appellant cites his remorse and apologies made to the victim's brother after pleading guilty and again at the conclusion of the penalty phase. The presentence investigation report (PSI) also concludes that Robinson "is very sorry for what he has done." Similarly, the court's discussion of "Robinson's competency and history of mental health" is unfocused and, for the most part, unrelated to the issue of mitigation despite evidence that appellant's mental health problems constituted at least nonstatutory mitigation.[4]
Fourth, and most importantly, our review of the PSI and appellant's two psychiatric and clinical evaluations discloses evidence of mitigation that received little or no discussion in the sentencing order. It is clearly the responsibility of the trial court to affirmatively show that all possible mitigation has been considered and weighed, and it is error to fail to do so. Farr, 621 So.2d at 1371.
There is evidence that appellant had a lengthy and substantial history of drug abuse, which this Court has previously considered a nonstatutory mitigating circumstance. See, e.g., Besaraba v. State, 656 So.2d 441, 447 (Fla.1995) (history of alcohol and drug abuse); Caruso v. State, 645 So.2d 389, 397 (Fla.1994) (long-term drug addiction; defendant's recognition of drug problem); Heiney v. Dugger, 558 So.2d 398, 400 (Fla. 1990) (lengthy history of drug abuse and abuse of heroin, marijuana, and alcohol on daily basis immediately prior to murder). The PSI indicates:
Defendant states he has never had a problem with alcohol alone. Defendant further states he has used marijuana since age 14, occasionally smoking as many as eight joints per day. Defendant has experimented with numerous drugs, including methaqualone and hallucinogens. Defendant further admits to a four year history of frequent and problematic crack cocaine use.
Dr. Kirkland's report also refers to appellant's "lengthy history of abuse of alcohol and other drugs." And Dr. Berland states: "The defendant acknowledged a pattern of diverse and chronic substance abuse since age 14. He also received Ritalin in high doses from ages 6 to 9."
There is also evidence that Robinson suffered from various psychological "disturbances" and had a "lifelong history of apparent mental health problems," which this Court has previously considered mitigating in nature. See, e.g., Thompson v. State, 648 So.2d 692, 697 (Fla.1994)(chronic mental illness), cert. denied, ___ U.S. ___, 115 S.Ct. 2283, 132 L.Ed.2d 286 (1995); Marquard v. State, 641 So.2d 54, 56 n. 2 (Fla.1994)(antisocial personality), cert. denied, ___ U.S. ___, 115 S.Ct. 946, 130 L.Ed.2d 890 (1995); DeAngelo v. State, 616 So.2d 440, 443 (Fla.1993) (hallucinations, delusional paranoid beliefs, mood disturbance, bipolar disorder); Klokoc v. State, 589 So.2d 219, 222 (Fla.1991)(bipolar affective disorder, manic type with paranoid features; family history of suicide and emotional disturbance); Heiney, 558 So.2d at 400 (mood disorders, lengthy history of serious emotional disturbance); Cochran v. State, 547 So.2d 928, 932 (Fla.1989)(depression).
After extensive interviewing and testing of Robinson, Dr. Berland concluded:
[T]here was evidence of chronic psychotic disturbance involving thought disorder (esp. delusional paranoid thinking) and mood disturbance (esp. disturbance of a manic nature). In addition to evidence of mental illness in his test results, there was also evidence of some antisocial (sociopathic or potentially criminal) character disturbance. His test results suggested, however, that some of this antisocial appearance was mediated by his manic disturbance. There was also evidence of significant, bilateral (in both hemispheres), cerebral cortical *180 impairment. The test results raised the possibility of temporal lobe involvement in both the left and right hemispheres....
....
[T]here was evidence of delusional paranoid thinking, tactile and auditory perceptual disturbances, and significant episodes of depression and manic disturbances whose origin appeared to be endogenous (as opposed to being the product of his environmental circumstances).
After numerous interviews with Robinson's mother, Dr. Berland corroborated many of his findings:
The defendant's mother corroborated behavior and verbalizations by the defendant throughout his life span which suggested the presence of delusional paranoid thinking, manic and depressive mood disturbance, and perceptual disturbance (particularly auditory hallucinations). She also reported both a paternal and maternal family history of mental illness and psychiatric hospitalizations, raising the likelihood that some of this defendant's problems were of genetic origins, though their intensity may have been supplemented by brain injury.
Additionally, the PSI reports that Robinson was tested several times for psychological disorders which revealed "narcissistic tendencies." While Dr. Berland's and Dr. Kirkland's reports conflict as to appellant's mental and emotional problems,[5] the trial court never discusses whether, or how and why, it may have resolved this conflict against appellant.
The record also suggests appellant's mental functioning may have been impaired by several brain injuries, which may qualify as a mitigating factor. See, e.g., DeAngelo, 616 So.2d at 443 (bilateral brain damage); Heiney, 558 So.2d at 400 (serious head injuries, brain damage). The PSI revealed that appellant may have suffered minor brain damage during birth; appellant was also in an industrial accident that left him oxygen deprived for nearly one hour; and, in 1992, he was hit and severely injured by an automobile while he was riding a bicycle. Dr. Berland's report corroborates these findings:
The defendant acknowledged an extensive history of incidents which might have contributed to impairment from brain injury, and in some of those instances, selectively endorsed some symptoms and denied others indicative of brain injury (suggesting the genuineness of his endorsements)....
Additionally, Dr. Berland's interviews with Robinson's mother corroborated many of the events which may have contributed to his brain injury.
Finally, the record reflects that appellant may have had a difficult and unstable childhood, which has sometimes been considered a mitigating circumstance. See, e.g., Besaraba, 656 So.2d at 446 (unstable and deprived childhood); Thompson v. State, 648 So.2d 692, 697 (Fla.1994) (family background). He received little or no supervision from his father and his parents divorced when Robinson was fifteen. Appellant spent brief periods in state and military schools, and was separated from his family at an early age. This mitigating circumstance was also not considered or weighed by the trial court.
Because the trial court failed to consider and weigh all of the available mitigating evidence in the record as required by Farr, we vacate the death sentence imposed by the trial court.[6] We remand to the trial court to conduct a new penalty-phase hearing before the judge alone in accordance with Farr and within sixty days hereof.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in result only.
NOTES
[1] Appellant claims that: (1) the trial court erred by not considering valid mitigation in violation of Farr v. State, 621 So.2d 1368 (Fla.1993); (2) the trial court erred in finding that the pecuniary gain aggravator was proven beyond a reasonable doubt; (3) the trial court erred in finding that the avoid-arrest aggravator was proven beyond a reasonable doubt; (4) the trial court erred in finding that the cold, calculated, and premeditated aggravator was proven beyond a reasonable doubt; and (5) this Court should recede from Hamblen v. State, 527 So.2d 800 (Fla.1988).
[2] This Court has repeatedly recognized the right of a competent defendant to waive presentation of mitigating evidence. E.g., Pettit v. State, 591 So.2d 618 (Fla.), cert. denied, 506 U.S. 836, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992); Henry v. State, 586 So.2d 1033 (Fla.1991), judgment vacated on other grounds, 505 U.S. 1216, 112 S.Ct. 3021, 120 L.Ed.2d 893 (1992); Anderson v. State, 574 So.2d 87 (Fla.), cert. denied, 502 U.S. 834, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991); Hamblen v. State, 527 So.2d 800, 804 (Fla.1988).
[3] This case is remarkably similar to Farr wherein the defendant pled guilty, waived his right to a penalty phase jury, and asserted that he wanted to die.
[4] The trial court found appellant competent based upon the evaluations of a psychiatrist, Dr. Robert Kirkland, and a psychologist, Dr. Robert Berland.
[5] Unlike Dr. Berland, Dr. Kirkland found that "mental status shows no abnormality of emotional tone nor thought process."
[6] Although we decline to specifically address appellant's four remaining claims of error because his first claim is dispositive of the case, we find that they are without merit.