913 So.2d 514 (2005)
Michael ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
Michael Robinson, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC03-1229, SC04-772.
Supreme Court of Florida.
July 7, 2005.
Rehearing Denied October 18, 2005.
*517 Melissa Minsk Donoho and James S. Lewis, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Michael L. Robinson, a prisoner under sentence of death, appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons set forth below, we affirm the trial court's denial of Robinson's postconviction motion and deny Robinson's petition for writ of habeas corpus.

FACTUAL AND PROCEDURAL HISTORY
The facts are taken from this Court's decision in Robinson's first direct appeal:
On January 23, 1995, appellant pled guilty to the first-degree murder of Jane Silvia. Prior to the plea colloquy, appellant's counsel explained that appellant did not wish to proceed to trial, did not wish to present any defense, did not want his attorneys to file any motions on his behalf, and did not want to present any mitigation at the penalty phase. Appellant expressed that he desired to die and was "seeking the death penalty in this case."
On March 30, 1995, appellant waived his right to a penalty phase jury and the cause proceeded to sentencing before the trial court. The State called as its sole witness Detective David Griffin, who was the lead homicide investigator in the case and had taken two taped statements from appellant. At the penalty phase, Detective Griffin played the second taped interview in which appellant admitted to killing Jane Silvia. Relying on Koon v. Dugger, 619 So.2d 246 (Fla.1993), the defense proffered mitigating evidence which it had received from a psychologist, Dr. Berland, and appellant's mother. The State also presented brief testimony from the victim's brother who told the court that Robinson "destroyed my family." In addition to the evidence presented at the hearing, the court directed that a presentence investigation be conducted as to the circumstances of the crime and the defendant's background. A presentence report was subsequently completed and filed with the court.
On April 12, 1995, the trial court sentenced appellant to death. The court found three aggravating circumstances: (1) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest, see § 921.141(5)(e), Fla. Stat. (1995); (2) the capital felony was committed for pecuniary gain, see id. § 921.141(5)(f); and (3) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, see id. § 921.141(5)(i). The court concluded that the aggravating circumstances could not be outweighed by any potential mitigating circumstances and sentenced appellant to death.
Robinson v. State, 684 So.2d 175, 176 (Fla.1996) (Robinson I).
*518 On appeal Robinson raised five issues, including that the trial court erred by not considering valid mitigation in violation of Farr v. State, 621 So.2d 1368 (Fla.1993).[1]Robinson I, 684 So.2d at 176-77. This Court vacated Robinson's death sentence on this issue "[b]ecause the trial court failed to consider and weigh all of the available mitigating evidence in the record as required by Farr." Id. at 180. "We remand[ed] to the trial court to conduct a new penalty-phase hearing before the judge alone in accordance with Farr . . . ." Id.
Robinson's second penalty phase occurred in July 1997. Thereafter, the trial court again sentenced Robinson to death, finding the same three aggravating factors as before. Robinson v. State, 761 So.2d 269, 272-73 (Fla.1999) (Robinson II). The trial court found two statutory mitigating factors: "(1) Robinson suffered from extreme emotional distress (some weight) and (2) Robinson's ability to conform his conduct to the requirements of the law was substantially impaired due to history of excessive drug use (great weight)," and eighteen nonstatutory mitigating factors.[2]Id. at 273. On appeal from the second penalty proceeding, Robinson raised seven claims:
(1) the trial court erred in denying Robinson's motion to withdraw his guilty plea; (2) the trial court erred in denying Robinson's motion for neurological testing; (3) the trial judge made prejudicial *519 comments on the record and denied Robinson additional funds with which to investigate mitigating evidence; (4) the sentence of death is disproportionate; (5) the trial court erred in finding the murder was committed for pecuniary gain; (6) the trial court erred in finding the murder was committed to avoid arrest; and (7) the trial court erred in finding the murder was cold, calculated and premeditated (CCP).
Id. at 273 n. 4. This Court found no error in any of the claims, but discussed only issues (1) through (4)[3] and affirmed Robinson's sentence of death. See id. at 273 n. 4, 279.
On October 3, 2001, Robinson filed a postconviction motion pursuant to rule 3.850, raising seventeen claims.[4] At the preliminary Huff[5] hearing on June 7, 2002, the trial court determined that an evidentiary hearing would be held on Robinson's third claim that his prior convictions are unreliable because no adversarial testing occurred due to the cumulative effects of (1) ineffective assistance of counsel; (2) the State's withholding of exculpatory or impeachment material; (3) the discovery of new evidence; and (4) the trial court's erroneous rulings.
At the evidentiary hearing on January 29-30, 2003, the defense presented the testimony of three mental health experts, trial counsel Mark Bender, a jail minister, and Robinson's mother. The State presented the testimony of one mental health expert. On May 19, 2003, the trial court denied relief on all seventeen claims in a written order. This appeal follows.

DISCUSSION
On appeal from the denial of rule 3.850 relief, Robinson argues that the trial court erred in denying an evidentiary hearing on numerous claims of ineffective assistance of counsel during the penalty phase, his claim that trial counsel was ineffective for failing to investigate and withdraw Robinson's guilty plea, and other claims raised for preservation purposes.[6]
*520 "[A] defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient." Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). "[W]here the motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied." Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998) (citing Steinhorst v. State, 498 So.2d 414 (Fla.1986)). However, in cases where there has been no evidentiary hearing, this Court must accept "the defendant's factual allegations to the extent that they are not refuted by the record." Peede v. State, 748 So.2d 253, 257 (Fla.1999). In other words, this Court "must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record." Atwater v. State, 788 So.2d 223, 229 (Fla.2001).

INEFFECTIVENESS OF COUNSEL
The elemental requirements for establishing claims of ineffective assistance of counsel are as follows:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, Robinson argues that trial counsel was ineffective for failing to present available mitigation and for failing to secure competent mental health assistance. He claims that his counsel failed to present the necessary evidence to convince the court to sentence him to life. While the trial court found that there was "no reasonable probability that additional evidence would have resulted in a different sentence," Robinson claims that this Court should remand for an evidentiary hearing to reweigh the aggravation against the totality of available mitigation. The State argues that Robinson has pointed to no specific mitigation that the trial court overlooked and instead is attempting to present cumulative information, which does not meet a defendant's burden of pleading. We agree.
Robinson argued to the trial court that the following mitigation should have been considered: the results of a PET scan; the fact that he lived alone or in state juvenile facilities as an adolescent, finally succumbing to a cycle of drug abuse and crack addiction; the fact that he suffered trauma resulting in brain damage, exacerbated by drug addiction; the fact that his young life was marked by severe physical and psychological abuse and emotional and educational deprivation; and he was using drugs during the night and early morning hours leading up to the incident. The trial court found that the record affirmatively refuted "Robinson's claim that these items were not considered."
We conclude that the trial court properly denied Robinson's claim because it is *521 refuted by the record. The record of the second penalty phase reflects that trial counsel called three witnesses: Dr. James Upson, a clinical psychologist; Dr. Jonathan Lipman, a neuropharmacologist; and Barbara Judy, Robinson's mother. Dr. Upson testified that he spent two days testing Robinson and two days interviewing him and had the following background materials: statements relative to the crime event, the attorney's file, an extensive set of documents compiled by investigator Lynn Williams, a factual history (employment history, etc.), and interviews. He administered various tests, including the Wechsler Adult Intelligence Scale and an achievement test, among others. These tests indicated that Robinson had a high average IQ and was somewhat depressed. Dr. Upson testified that in his opinion, the crime was committed while Robinson was under the influence of extreme mental or emotional distress and that Robinson "acted under an extreme duress." Dr. Upson also spoke with Robinson's father, who reported being an alcoholic. Dr. Upson testified that Robinson's test results were consistent with heavy drug use and corroborated Robinson's background material, namely that he still shows features of attention deficit disorder. Finally, Dr. Upson testified that Robinson has a capacity for rehabilitation while in prison.
Dr. Lipman testified that Robinson had an extensive history of drug abuse from an early age. Specifically, Dr. Lipman testified that Robinson experiences "ongoing conceptual aberrations" from LSD, was using Ritalin from ages six through nine, began smoking marijuana at age fourteen, combined alcohol with Valium around this same time, and started using other drugs, such as crack, LSD, and cocaine, around age sixteen. Robinson told Dr. Lipman about getting married at age seventeen, and how his wife introduced him to the "intravenous habit" of injecting Preludin and Dilaudid, the combination of which is called "speed-balling." Robinson was also ingesting crystal methamphetamine at this time. Dr. Lipman testified that Robinson was on an intense, four-week cocaine binge leading up to the murder, was "quite paranoid," and "experience[d] pressured thought and compulsion in his thinking," as well as hallucinations. Dr. Lipman testified that these problems are "indicative of an organic problem with his brain" and that there may be some damage to Robinson's temporal lobe that interferes with his daily life but does not keep him from functioning in normal, everyday society. Dr. Lipman also testified that he considered Robinson's history of head injuries when making his diagnosis, and that Robinson has borderline personality traits. Finally, Dr. Lipman testified that he is familiar with mitigation and that in his opinion, Robinson was under the influence of extreme mental or emotional disturbance at the time of the murder and was under extreme duress. "Mr. Robinson clearly knew that he was wrong, but his ability to control his behavior was obviously impaired, given the compulsion that he describes."
Robinson's mother testified that around the time of the murder, she was "pretty sure" Robinson was abusing drugs because the "pattern was there" and "his behavior was very agitated and paranoid." She stated that every time Robinson got into trouble it was "tied to drugs." She discussed Robinson's childhood, illnesses, accidents, and schooling, the fact that his father was not nurturing or loving, and his father's drinking problem and verbal and physical abuse. She also discussed his attention deficit disorder and use of Ritalin, and stated that she and Robinson's father divorced when Robinson was fourteen. She testified that she "in effect" abandoned Robinson when he was fifteen *522 by taking her other child and moving to Florida and that Robinson felt she was responsible for all of his problems. She stated that Robinson obtained his G.E.D., was married at one time, and obtained an honorable discharge from the Missouri National Guard. Finally, she testified that she would like his life to be spared because she loved him and he was sorry for what he did.
Based on this testimony, the trial court found two important statutory mitigating factors: (1) Robinson suffered from extreme emotional distress (given some weight) and (2) Robinson's ability to conform his conduct to the requirements of the law was substantially impaired due to history of excessive drug use (great weight). The court also found eighteen nonstatutory mitigating factors.
Initially, we reiterate that the proper test regarding prejudice in ineffective assistance of counsel claims is that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Also, it is important to note that "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Id. Nevertheless, we find no error by the trial court.[7]
Clearly, this is not a case where trial counsel failed to investigate and present available mitigating evidence. See, e.g., Rose v. State, 675 So.2d 567, 571-72 (Fla.1996) (stating that an attorney has a duty to conduct a reasonable investigation for possible mitigating evidence). Moreover, we find no error in the trial court's conclusion that the evidence that Robinson now claims would have been presented by additional witnesses is merely cumulative to that which was actually presented at the penalty phase. See Gudinas v. State, 816 So.2d 1095, 1105-06 (Fla.2002) (finding that trial counsel was not ineffective for failing to present mitigation brought forth at evidentiary hearing that was cumulative to evidence presented in mitigation at penalty phase).
Robinson also claims that the trial court erred in summarily denying his claim that trial counsel ineffectively failed to secure competent mental health assistance. Again, we disagree because, based on the *523 extensive testimony described above, the trial court found an abundance of "mental health mitigation." It is apparent from the record that trial counsel secured competent mental health experts who effectively conveyed their findings to the trial court, and we conclude that the trial court did not err in denying relief on this claim.
Second, Robinson argues that the trial court erred in summarily denying his claim that trial counsel was ineffective for not informing Robinson of his right to a jury and not asserting Robinson's desire to have a jury determination of sentence. He claims that, notwithstanding Robinson's earlier waiver, this Court's remand should have afforded him the right to decide anew whether he wished to have a jury because a defendant has the right to change his mind when afforded a new sentencing proceeding. The trial court found the claim procedurally barred because Robinson raised it on direct appeal, and this Court found that the record refuted his claim that he could not intelligently waive his right to a trial. Robinson II, 761 So.2d at 274. Further, the trial court held that because this Court expressly limited the remand in Robinson I for "a new penalty phase hearing before the judge alone," Robinson could not assert a nonexistent right.
Again we find no error. We agree with the trial court that trial counsel could not be deemed ineffective for failing to raise an issue already resolved on appeal and, specifically, for following this Court's express mandate. See Gordon v. State, 863 So.2d 1215, 1219 (Fla.2003) ("Since counsel cannot be deemed ineffective for pursuing futile motions, trial counsel cannot be deemed to have performed deficiently in this regard."). When this Court remands for new penalty proceedings, it often does so with specific directions for the trial court. See, e.g., Mora v. State, 814 So.2d 322, 333 (Fla.2002) ("In the new penalty phase, the trial court is to apply our decisions in Koon [v. Dugger, 619 So.2d 246 (Fla.1993)], Farr v. State, 656 So.2d 448 (Fla.1995), and Muhammad v. State, 782 So.2d 343 (Fla.2001)."); Spencer v. State, 645 So.2d 377, 379 (Fla.1994) (vacating the defendant's death sentence and remanding the "case for reconsideration by the judge").[8]
Third, Robinson claims the court erred in summarily denying his claim that trial counsel was ineffective for failing to move to recuse the trial judge before the new penalty phase proceedings. The trial court denied this claim, finding that it was procedurally barred because it was previously made on the record and, therefore, "should have been, could have been, or actually was raised on direct appeal." The trial court also found that the claim lacked merit because Robinson's lawyer testified that he had asked Robinson if he wanted another judge, and they had both agreed that Robinson and Judge Russell had a good rapport and she was not unduly influenced by the facts of the case. We find no error in the trial court's ruling that the claim is procedurally barred because it was raised on direct appeal. In Robinson II, *524 we found no merit to Robinson's claim that "the trial judge made prejudicial comments on the record and denied Robinson additional funds with which to investigate mitigating evidence." Robinson II, 761 So.2d at 273 n. 4. We concluded that "[n]one of the alleged comments by the trial judge indicated bias or prejudice against the defense, and the record indicates that the trial court granted all of Robinson's requests for appointment of experts and additional funds with which to investigate mitigating evidence." Id.
Robinson's attempt to reframe this issue as one of ineffective assistance of counsel must fail where the underlying issue was decided on appeal and the evidence supports a conclusion that the issue lacks merit. Medina v. State, 573 So.2d 293, 295 (Fla.1990) ("Allegations of ineffective assistance cannot be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal."). The record demonstrates that trial counsel considered the issue, discussed it with Robinson, and made a strategic decision not to recuse Judge Russell. "Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Brown v. State, 894 So.2d 137, 147 (Fla.2004); see also Kenon v. State, 855 So.2d 654, 656 (Fla. 1st DCA 2003) ("Absent extraordinary circumstances, strategic or tactical decisions by trial counsel are not grounds for ineffective assistance of counsel claims."), review denied, 868 So.2d 523 (Fla.2004). We find no error in the trial court's denial of this claim.[9]
*525 Robinson next argues that the trial court erred in denying his claim that trial counsel was ineffective for failing to investigate and withdraw his guilty plea. Again we conclude that this claim was previously raised on appeal and rejected. Before the start of Robinson's second penalty phase, trial counsel made an oral motion to withdraw the guilty plea Robinson entered before the original proceedings on the grounds that "Robinson was not able to form an intelligent waiver of his rights." The trial court denied the oral motion, stating, "I can remember the plea, where he told us why he did what he did and he appeared very confident to me. And I am denying the motion to withdraw the plea."
On appeal from the resentencing, Robinson claimed that the trial court erred in denying the motion to withdraw the plea. This Court disagreed, citing Yesnes v. State, 440 So.2d 628 (Fla. 1st DCA 1983), in which the First District Court of Appeal analyzed the requirements for withdrawing pleas:
Rule 3.170(f), Florida Rules of Criminal Procedure, provides that "the court may, in its discretion, and shall upon good cause, at any time before a sentence, permit a plea of guilty to be withdrawn" (emphasis supplied). The burden is upon a defendant to establish good cause under the rule, and use of the word "shall" indicates that such a showing entitles the defendant to withdraw a plea as a matter of right. Use of the word "may," however, suggests that the rule also allows, in the discretion of the court, withdrawal of the plea in the interest of justice, upon a lesser showing than good cause. In any event, this rule should be liberally construed in favor of the defendant. Adler v. State, 382 So.2d 1298, 1300 (Fla. 3d DCA 1980). The law inclines toward a trial on the merits; and where it appears that the interests of justice would be served, the defendant should be permitted to withdraw his plea. Morton v. State, 317 So.2d 145, 146 (Fla. 2d DCA 1975). A defendant should be permitted to withdraw a plea "if he files a proper motion and proves that the plea was entered under mental weakness, mistake, surprise, misapprehension, fear, promise, or other circumstances affecting his rights" (emphasis supplied). Baker v. State, 408 So.2d 686, 687 (Fla. 2d DCA 1982).
Robinson II, 761 So.2d at 274 (quoting Yesnes, 440 So.2d at 634). This Court found no error in the trial court's denial of Robinson's motion because the record refuted his claim that he could not "form an intelligent waiver of his right to a trial," and explained:
The record reflects that Robinson's plea was only accepted after an extensive inquiry. At the plea colloquy, the trial court asked Robinson whether he intended to plead guilty to first-degree murder and informed Robinson that the only possible sentences upon conviction for first-degree murder were death and life in prison. The trial court then questioned Robinson extensively about his background and the factual circumstances of the murder. Robinson explained to the trial court that he would rather be punished by death than sentenced to life in prison. Further, defense counsel notified the court that Robinson had been examined by medical experts and it was their opinion that Robinson was competent to proceed. In addition, both defense counsel and the State questioned Robinson to make sure that he understood that defense counsel had investigated mitigating evidence and that counsel was prepared to present such evidence on his behalf. Robinson stated that he understood but that he did not want to present any mitigating evidence. Finally, the state attorney *526 told Robinson that he intended to seek the death penalty in this case. The record thus indicates that Robinson voluntarily and intelligently waived his right to a trial. He has failed to demonstrate why such plea should be withdrawn. Accordingly, we find no error.
Robinson II, 761 So.2d at 274-75.
Robinson now claims trial counsel was ineffective for failing to do more to support the oral motion to withdraw the guilty plea. The trial court denied this claim after an evidentiary hearing, finding that his request for the death penalty was not inconsistent with his competency to plead guilty:
From the first day he appeared in court, Mr. Robinson was determined to plead guilty and seek the death penalty. He was consistent with this request in every court hearing. At the January 1995, plea hearing, he asked Judge Russell whether she was sure she could impose the death penalty without a jury. The transcript of this hearing demonstrated that he was calm and focused, showing none of the manic behavior which has been mentioned so often. He responded directly, with coherent explanations for his answers. At the first sentencing hearing, he insisted upon his competence. He expressed his satisfaction with his attorneys, acknowledging that they had attempted to convince him to pursue mitigation but taking full responsibility upon himself for the decision not to do so. Even after the second sentencing hearing, following the unsuccessful attempt to withdraw the plea, he expressed his understanding that imposing the death penalty was a difficult thing to do. Several years on death row and consultations with a spiritual advisor have persuaded him that he should leave this life or death matter in God's hands. However, this change of heart does not invalidate his original decisions.
The trial court concluded that Robinson suffered no prejudice from trial counsel's failure to file an additional written motion to withdraw his plea or to present additional testimony because the record reflected that the issue had been adequately addressed at trial and on appeal.
Ineffective assistance of counsel claims are mixed questions of law and fact, and therefore this Court conducts "an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings." State v. Riechmann, 777 So.2d 342, 350 (Fla.2000). Moreover, it appears that because this claim involves a guilty plea, ineffectiveness is determined by the test set out in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985):
The first prong is the same as the deficient performance prong of Strickland. Regarding the second prong, the Supreme Court in Hill held that a defendant must demonstrate "a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial."
Grosvenor v. State, 874 So.2d 1176, 1179 (Fla.2004) (citations omitted) (quoting Hill, 474 U.S. at 59, 106 S.Ct. 366).
We conclude that the trial court's factual findings on this issue are adequate and are supported by competent, substantial evidence in the record. The 1995 plea colloquy was summarized by this Court in Robinson II. In short, this Court concluded, based on this colloquy, that "the record conclusively refutes Robinson's claim that he was unable to form an intelligent waiver of his right to a trial. The record reflects that Robinson's plea was only accepted after an extensive inquiry." Robinson II, *527 761 So.2d at 274. Importantly, this Court also noted:
We find no merit to Robinson's subclaim that he will be denied the benefit of his bargain if he is not allowed to change his plea. Robinson pled guilty and specifically demanded the death penalty. The fact that this Court initially reversed his sentence of death does not deny him the right to seek imposition of the death penalty. He may still do so. It appears that he merely changed his mind and no longer wishes to die.
Id. at 275 n. 5. Thus, the trial court's conclusion that Robinson was determined to plead guilty and seek the death penalty is supported by the record. Further, Judge Russell has had the advantage of observing Robinson directly throughout the entire proceedings (from the original penalty phase through the evidentiary hearing). The trial court's conclusions, therefore, that "Robinson has consistently provided logical, rational reasons for pleading guilty," and "always presented himself as an intelligent, articulate person with keen insight and self-awareness," are supported by the record.
Initially, Robinson has failed to meet the deficiency prong of the test for ineffective assistance of counsel. Trial counsel testified at the evidentiary hearing that it was his honest belief that counsel did his best to convince Robinson to go to trial even though there was no real defense to mount. He testified that even if the trial court had allowed withdrawal of the plea, Robinson would have been back at square one with a guilt phase and penalty phase ahead. He also thought about seeking the disqualification of Judge Russell but felt that Robinson and Judge Russell already had a good rapport and Judge Russell was not improperly biased by the facts of the case; therefore, Robinson's counsel thought Robinson had the best chance of receiving a life sentence with her as presiding judge. Although trial counsel admitted at the evidentiary hearing that arguably he could have done a better job by submitting a written motion to withdraw the plea and asking for a separate hearing, Robinson has failed to demonstrate that he was prejudiced by counsel's performance. See Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").
In other words, if we assume trial counsel rendered deficient performance by not submitting a written motion, Robinson has failed to demonstrate a reasonable probability that under the circumstances then prevailing, he would not have pleaded guilty and would have insisted on going to trial. Furthermore, to withdraw the plea, the defense would have had to "offer proof that the plea was not voluntarily and intelligently entered," Robinson II, 761 So.2d at 274, and there is no indication in the record that defense counsel would have been able to do so. At the time of the plea, trial counsel "notified the court that Robinson had been examined by medical experts and it was their opinion that Robinson was competent to proceed." Id.
In light of the trial court's extensive findings and this Court's previous determination that "the record conclusively refutes Robinson's claim that he was unable to form an intelligent waiver of his right to a trial," we find no error in the trial court's denial of relief. Id.

PETITION FOR HABEAS CORPUS
In his petition for habeas corpus, Robinson argues that this Court erred in Robinson I by remanding for a new penalty *528 phase before the trial judge alone, that appellate counsel was ineffective for failing to raise that issue with this Court, and that his death sentence is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
Robinson claims that this Court erred in precluding Robinson from seeking a penalty phase jury. We reject this claim on the merits. Further, however, this claim is procedurally barred because it was also raised in the 3.850 proceeding. See Porter v. Crosby, 840 So.2d 981, 984 (Fla.2003) ("[C]laims raised in a habeas petition which petitioner has raised in prior proceedings and which have been previously decided on the merits in those proceedings are procedurally barred in the habeas petition.").
Robinson also claims that appellate counsel was ineffective for failing to raise this issue on direct appeal. However, appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. See Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1996). In light of this Courts decision that the new penalty phase was to be before the judge alone, appellate counsel had no reason to challenge whether this Court had considered the nature of the proceedings to be conducted on remand. Cf. Spencer v. State, 842 So.2d 52, 70 (Fla.2003) (denying habeas claim that this Court's order on remand was ambiguous as to whether a new jury should be impaneled where remand specifically directed "reconsideration of the death sentence by the judge").
Robinson argues further that he is entitled to relief under Ring. However, this claim is foreclosed because we have previously determined that Robinson lawfully waived the right to a penalty phase jury. See Dessaure v. State, 891 So.2d 455, 471-72 (Fla.2004).

CONCLUSION
In light of the above analysis, we affirm the trial court's denial of Robinson's postconviction motion and deny Robinson's petition for writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Robinson's other claims included:

(2) the trial court erred in finding that the pecuniary gain aggravator was proven beyond a reasonable doubt; (3) the trial court erred in finding that the avoid-arrest aggravator was proven beyond a reasonable doubt; (4) the trial court erred in finding that the cold, calculated, and premeditated aggravator was proven beyond a reasonable doubt; and (5) this Court should recede from Hamblen v. State, 527 So.2d 800 (Fla.1988).
Robinson I, 684 So.2d at 176 n. 1. We declined to specifically address these other four claims because the first claim was dispositive of the case, but we found that they were without merit. Id. at 180 n. 6.
[2] These included:

(1) Robinson had suffered brain damage to his frontal lobe (given little weight because of insufficient evidence that brain damage caused Robinson's conduct); (2) Robinson was under the influence of cocaine at the time of murder (discounted as duplicative because cocaine abuse was considered in statutory mitigators); (3) Robinson felt remorse (little weight); (4) Robinson believed in God (given little weight); (5) Robinson's father was an alcoholic (given some weight); (6) Robinson's father verbally abused family members (given slight weight); (7) Robinson suffered from personality disorders (given between some and great weight); (8) Robinson was an emotionally disturbed child, who was diagnosed with ADD, placed on high doses of Ritalin, and placed in special education classes, changed schools five times in five years, and had difficulty making friends (given considerable weight); (9) Robinson's family had a history of mental health problems (given some weight); (10) Robinson obtained a G.E.D. while in a juvenile facility (given minuscule weight); (11) Robinson was a model inmate (given very little weight); (12) Robinson suffered extreme duress based on fear of returning to prison because [sic] where he was previously raped and beaten (given some weight); (13) Robinson confessed to the murder and assisted police (given little weight); (14) Robinson admitted several times to having a drug problem and sought counseling (given no additional weight to that already given for history of drug abuse); (15) the justice system failed to provide requisite intervention (given no additional weight to that already given for history of drug abuse); (16) Robinson successfully completed a sentence and parole in Missouri (given minuscule weight); (17) Robinson had the ability to adjust to prison life (given very little weight); and (18) Robinson had people who loved him (given extremely little weight).
Robinson II, 761 So.2d at 273.
[3] We held after discussion that there was no merit to claims (1) through (4). Robinson II, 761 So.2d at 273-78.
[4] Robinson's motion alleged: (1) denial of right to effective representation by the short time period and lack of funding; (2) denial of access to records; (3) his prior convictions are unreliable because no adversarial testing occurred due to the cumulative effects of ineffective assistance of counsel, the withholding of exculpatory or impeachment material, newly discovered evidence, and/or improper rulings by the trial court; (4) counsel ineffectively failed to investigate and prepare; (5) Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), error; (6) Robinson is innocent of first-degree murder; (7) Florida law unconstitutionally shifts the burden to the defendant to prove that death is inappropriate and counsel ineffectively failed to object; (8) Florida's capital statute is facially vague and overbroad; (9) Florida's capital statute is unconstitutional on its face and as applied; (10) Robinson is insane to be executed; (11) Robinson did not voluntarily, knowingly, and intelligently waive his right to a capital sentencing jury; (12) the trial court precluded the presentation of mitigation; (13) execution by electrocution and/or lethal injection is unconstitutionally cruel and unusual punishment; (14) cumulative error; (15) trial court failed to find and consider mitigation and trial counsel rendered ineffective assistance with respect to mitigation; (16) improper conduct by the trial court and trial counsel rendered ineffective assistance with respect to this conduct; and (17) the trial court unconstitutionally denied Robinson's request for a PET scan.
[5] Huff v. State, 622 So.2d 982 (Fla.1993).
[6] These claims raised for preservation purposes include (1) public records in this case may remain undisclosed by state agencies; (2) Robinson is innocent of the death penalty; (3) Robinson is insane to be executed; (4) the trial court violated the Eighth and Fourteenth Amendments in its consideration of mitigation and failure to find mitigating circumstances; and (5) execution by lethal injection is unconstitutional.
[7] This test differs from the more rigorous standard applied to claims for new trials based upon newly discovered evidence. In Strickland the Court rejected that more rigorous standard, explaining:

On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. . . .
Even when the specified attorney error results in the omission of certain evidence, the newly discovered evidence standard is not an apt source from which to draw a prejudice standard for ineffectiveness claims. The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged. Cf. United States v. Johnson, 327 U.S. 106, 112, 66 S.Ct. 464, 90 L.Ed. 562 (1946). An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.
Strickland, 466 U.S. at 693-94, 104 S.Ct. 2052 (emphasis added).
[8] Robinson's reliance on Phillips v. State, 705 So.2d 1320 (Fla.1997), is misplaced. Phillips states that "Phillips' resentencing proceeding was a `completely new proceeding,' and the trial court was therefore under no obligation to make the same findings as those made in Phillips' prior sentencing proceeding." Id. at 1322. Phillips does not hold, as a matter of law, that a defendant must be given the opportunity, upon resentencing, to change his mind regarding waiver of the penalty phase jury. Finally, to the extent Robinson claims this Court erred in Robinson I, this claim is procedurally barred because it is a matter proper for a motion for rehearing and could have been raised in Robinson's direct appeal from resentencing. See, e.g., Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995).
[9] Robinson also claims that trial counsel failed to preserve by objection or motion the unconstitutionality of Florida's death penalty statute as well as the unconstitutional shifting to the defense of the burden to demonstrate that mitigation outweighs aggravation. However, Robinson concedes that these claims were rejected by the trial court and are thus simply raised for preservation pursuant to this Court's direction in Sireci v. State, 773 So.2d 34, 41 n. 14 (Fla.2000). In any event, this Court has repeatedly denied claims challenging the constitutionality of Florida's death penalty statute. See Fotopoulos v. State, 608 So.2d 784, 794 & n. 7 (Fla.1992). Also, this Court has stated that the "burden shifting argument" raised here by Robinson is procedurally barred because it could have been raised on direct appeal. See Demps v. Dugger, 714 So.2d 365, 367-68 (Fla.1998). Robinson also raises the following claims for preservation and to protect his rights: (1) public records in this case may remain undisclosed by state agencies; (2) Robinson is innocent of the death penalty; (3) Robinson is insane to be executed; (4) trial court violated the Eighth and Fourteenth Amendments in its consideration of mitigation and failure to find mitigating circumstances; and (5) execution by lethal injection is unconstitutional. He concedes that the trial court rejected these claims but notes that he is raising them merely for preservation purposes pursuant to Sireci, 773 So.2d at 41 n. 14. The trial court properly denied claim (1) as legally insufficient because Robinson himself stated that he was "unable to specify the nature of records which may remain undisclosed." This Court rejected a claim similar to claim (2) in Sochor v. State, 883 So.2d 766, 788 (Fla.2004) "because we found on direct appeal that the evidence supported the existence of three aggravating circumstances." Id. at 788. Likewise, this Court found on direct appeal in Robinson's case that the evidence supported three aggravating circumstances; thus, his claim is without merit. Id. Claim (3) is not ripe because while Robinson is under a death sentence, no death warrant has been signed and his execution is not imminent; thus, the trial court properly denied relief on this claim. See, e.g., Griffin v. State, 866 So.2d 1, 21-22 (Fla.2003). The trial court properly denied claim (4) as procedurally barred because Robinson is arguing trial court error that should have been raised on direct appeal, Phillips v. State, 894 So.2d 28, 35 n. 6 (Fla.2004), and this Court has repeatedly rejected claims similar to claim (5) as being without merit. See Sims v. State, 754 So.2d 657, 668 (Fla.2000) (holding that execution by lethal injection is not cruel and unusual punishment).